JN



IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| NAEEM M. ABDURRAHMAN | § § | |
| v. | § § | CIVIL NO. A-00-CV-813 JN |
| THE UNIVERSITY OF TEXAS, et. al. | § | |

## ORDER

Before the Court are Defendants' Motion for Summary Judgment (Clerk's Doc. No. 31), Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Clerk's Doc. No. 37), Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Clerk's Doc. No. 43), and Plaintiff's Supplemental Authority in Opposition to Defendants' Motion for Summary Judgment (Clerk's Doc. No. 40). Upon review of the pleadings, the applicable legal authorities, and the entire case file, the Court enters the following Order.

### *Background*

Plaintiff, a tenure-track professor, was denied tenure and subsequently terminated by The University of Texas in January 1999. Plaintiff claims that these actions were in violation of the First Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 2000d.

### *Summary Judgment Standard*

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The

party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman*, 113 F.3d at 533. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. Unsupported allegations, affidavit, or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citing *Anderson*, 477 U.S. at 248). Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Applying these standards, the Court turns to the merits of the motion for summary judgment.

### *Qualified Immunity from the 42 U.S.C. § 1981 Claim*

Defendants assert they are entitled to qualified immunity from the claims made by Plaintiff. Plaintiff argues that Defendants are precluded from raising the defense of qualified immunity at this time per the strictures of Western District of Texas Local Rule CV-12. Local Rule CV-12 states that "the party or parties asserting the defense [of qualified immunity] *shall file a motion to dismiss or for summary judgment* in their initial pleading or within thirty days of their initial pleading." Western District of Texas Local Rule CV-12 (emphasis added). Defendants did not comply with this Rule. However, the Court will waive Rule CV-12 in this case per Local Rule CV-1(e).

Turning to the merits of the qualified-immunity defense as applied to the 42 U.S.C. § 1981 discrimination claim, Plaintiff, in a section entitled "No Defendant Is Entitled to Qualified Immunity," makes no argument as to the applicability of this defense to this claim other than to state the following:

> As to the racial discrimination claims and retaliation claims, the law similarly is clearly established. In *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987), the United States Supreme Court upheld a claim under 42 U.S.C. § 1981 by an Arab Muslim claiming discrimination in the denial of tenure.
> That each of the defendants denied in response to discovery that plaintiff was at times material to this action considered of a race other than White for purposes of his claims significantly emphasizes the importance of the court's adhering to the well established rule that in determining the motion for summary judgment the court must give credence to plaintiff's evidence and the inference to be drawn therefrom.

(Pla. Opposition at 11.) This is simply not enough to satisfy Plaintiff's burden in overcoming the qualified immunity defense. Once a defendant pleads his good faith and establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly

established law. *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Moreover, Plaintiff *"cannot* rest on the pleadings; instead, [Plaintiff] must show genuine issues of material fact concerning the reasonableness of [Defendant]s' conduct." *Id.* at 490. While Defendants spend over fifteen pages in their Motion discussing the reasonableness of each individual Defendant's specific actions, Plaintiff attempts to satisfy his burden by citing a case that has nothing to do with qualified immunity and by making an arguably unwarranted inference from an answer given by Defendants in discovery. Accordingly, the Court finds that Plaintiff has wholly failed in satisfying his qualified-immunity burden and, therefore, that Defendants are entitled to qualified immunity from the 42 U.S.C. § 1981 claims asserted by Plaintiff.

### *The First Amendment Claim*

Plaintiff claims that Defendants violated the First Amendment by terminating him in retaliation for an e-mail that he sent to some coworkers. Defendants argue that Plaintiff's e-mail was not protected speech under the First Amendment. The Court agrees. In order to make out a First Amendment retaliation claim against a governmental employer, the Court must initially decide if the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick v. Meyers*, 461 U.S. 138, 146 (1983)). To that end, the following statement from the Supreme Court in the *Connick* case, dealing with a questionnaire distributed by an assistant district attorney to her coworkers, seems particularly relevant to the instant case:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

\* \* \* \*

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state.
>
> Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. In this case, with but one exception, the questions posed by Myers to her coworkers do not fall under the rubric of matters of "public concern." We view the questions pertaining to the confidence and trust that Myers' coworkers possess in various supervisors, the level of office morale, and the need for a grievance committee as mere extensions of Myers' dispute over her transfer to another section of the criminal court. Unlike the dissent, post, at 1698, we do not believe these questions are of public import in evaluating the performance of the District Attorney as an elected official. Myers did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases. Nor did Myers seek to bring to light actual or potential wrongdoing or breach of public trust on the part of Connick and others. Indeed, the questionnaire, if released to the public, would convey no information at all other than the fact that a single employee is upset with the status quo. While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of Myers' questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors. These questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celebre.
>
> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark -- and certainly every criticism directed at a public official -- would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Connick*, 461 U.S. at 146-49 (internal citation and footnotes omitted). In addition, the Fifth Circuit has recently "discern[ed] three reliable principles" in deciding whether or not the matter

in question is of public concern. *See Kennedy v. Tangipahoa Parish Library Bd. Of Control*, 224 F.3d 359, 372 (5th Cir. 2000).

> First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government. If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature. Second, speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate. And third, the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern.

*Id.* With these precepts at hand, the Court turns to the content, form, and context of Plaintiff's statement.

Plaintiff sent an e-mail on 30 January 1997 to two or three people associated with the Amarillo National Resource Center ("ANRC") and two Texas A&M University professors with whom Plaintiff was working.[1] The ANRC is a federally-funded consortium of three Texas universities that funds various research projects conducted by the faculties of the three schools. In the e-mail, Plaintiff laments having his budget for the current semester cut from $170,508 to $141,500 and the effect this will have on his personnel decisions.[2] Can this speech be "fairly considered as relating to any matter of political, social, or other concern to the community?" *Connick*, 461 U.S. at 146. Can this speech be characterized as anything other than an "employee [speaking] upon matters only of personal interest?" *Id.* at 147. Would the First Amendment

---

[1]The fact that this e-mail was sent three years before Plaintiff was terminated does not help his claim of being fired in retaliation for this message.

[2]Plaintiff's invitation to view his e-mail as illuminating the "misuse of allocated research funds" will be respectfully denied by the Court; there is simply nothing in Plaintiff's e-mail to indicate that was his intention or that he had even contemplated this. (Pla.'s Original Complaint at 7.)

protect this speech if not made by a government employee? *See id.* Would this e-mail, if released to the public, convey any information at all "other than the fact that a single employee is upset with the status quo?" *Id.* at 148. Was the focus of Plaintiff's e-mail anything other than to "gather ammunition for another round of controversy with h[is] superiors?" *Id.* Was this speech anything other than "strictly a discussion of management policies?" *Kennedy*, 224 F.3d at 372. Was the e-mail "made against the backdrop of public debate?" *Id.* Finally, was this speech anything more than speech "made in furtherance of a personal employer-employee dispute?" *Id.* The answer to all of these questions is a resounding "NO." Plaintiff's e-mail would be of absolutely no interest to the "public" or "community" as those terms are commonly used and reasonably understood. Plaintiff was simply complaining about his personal working conditions and the effect this was going to have on his planning. If this is a matter of public concern, then the First Amendment would "require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149.

### *The Title VI Claim*

Plaintiff claims that he was retaliated against by Defendants in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et. seq. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In order to make out a Title VI retaliation claim, Plaintiff would have to show he was terminated because of his allegations of noncompliance with the substantive provision of Title VI. *See Lowrey v. Texas A & M University System*, 117 F.3d 242, 248 (5th Cir. 1997) (stating that in order to make out a

claim for retaliation under Title IX, plaintiff would have to show that the retaliation against her "is based exclusively on allegations of noncompliance with the substantive provisions of title IX"). Defendants argue that Plaintiff submits no evidence of this. The Court agrees. Plaintiff does not cite any evidence for the proposition that he complained to his superiors that a person in a federally-funded program was being discriminated against on the basis of race, color, or national origin. Accordingly, Plaintiff's Title VI claim will be dismissed.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendants' Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all of Plaintiff's claims against all Defendants are hereby DISMISSED WITH PREJUDICE.

SIGNED AND ENTERED this 12th day of February, 2002.

JAMES R. NOWLIN
CHIEF UNITED STATES DISTRICT JUDGE