FILED
FEB 2 0 2002
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| NAEEM M. ABDURRAHMAN, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. A-00-CA-813 JN |
| THE UNIVERSITY OF TEXAS, DALE E. KLEIN, LARRY R. FAULKNER, SHELDON EKLAND-OLSON, BEN G. STREETMAN, NEAL E. ARMSTRONG, SHELDON LANDSBERGER and J. PARKER LAMB, | § | |
| Defendants. | § | |

## PLAINTIFF ABDURRAHMAN'S RULE 59 MOTION FOR RECONSIDERATION

Naeem M. Abdurrahman, plaintiff, moves for reconsideration of this court's summary judgment pursuant to the provisions of Rule 59, Fed.R.Civ.P.

### INTRODUCTION

While the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, the Fifth Circuit consistently has treated a motion so denominated, under Rule 59, provided that it challenges the prior judgment on the merits and is served within ten days of the rendition of judgment. *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994). The Fifth Circuit has noted that no specific grounds for relief are provided under Rule 59, Id. The motion may be based on substantive or procedural error, *Conley v. Board of Trustees of Grenada County Hosp.*, 707 F.2d 175

(5th Cir.1983), and is subject to the court's discretion, *Seidman v. American Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).

Here, plaintiff respectfully would demonstrate that the motion must be granted for both procedural and substantive errors.

While the court undoubtedly has reserved the discretion to waive provisions of the Local Rules, such waiver must be exercised under particularized circumstances of the case, and must not be arbitrary or result in fundamental unfairness. *Point Landing, Inc. v. Omni Capital Intern., Ltd.*, 795 F.2d 415, 430 (5th Cir. 1986), citing *In re United Corp.*, 283 F.2d 593 (3rd Cir.1960).

The court apparently decided the issue of qualified immunity based on the evidence of the defendants' asserted motive in rejecting plaintiff's tenure application. Such consideration is clearly against Fifth Circuit authority and a plain misapplication of qualified immunity principles. Certainly the law proscribing racial discrimination was clearly established at the material time, and plaintiff provided ample evidence to establish his claim. The authority cited by the court is precisely contrary to the court's position.

The court's analysis of the First Amendment claim is clearly erroneous, both as to the factual assertions and the applicable law.

The court's interpretation of the requirements of Title VI of the 1964 Civil Rights Act is contrary to the applicable legal authority, including that cited by the court.

1.

## Waiver of the Qualified Immunity Rule Was Arbitrary and Unfair.

There is no dispute that the qualified immunity defense was raised by defendants in their summary judgment motion long beyond the time allowed in the applicable local rule of the court.

The court, however, relies on the provisions in the Local Rules which allows the court to waive the provisions of the rules. The waiver was not sought by the defendants prior to the untimely filing. Nor was the waiver granted prior to the plaintiff's responding to the motion for summary judgment. The court specifically found that the defendants did not comply with the rule, but granted a waiver without explanation. Order, Docket No. 46, at 3.

As shown above, the Fifth Circuit has held that a district court's discretion to waive provisions of its local rules cannot be arbitrary or result in fundamental unfairness.

The waiver in this case fails on both counts.

In order not to be considered arbitrary, an action must bear some relationship to a legitimate purpose, based on choice, rather than reason or nature. See, e.g., *U.S. v. Chromalloy American Corp.*, 158 F.3d 345, 352 fn.5, 353 (5th Cir. 1998). No purpose is apparent in the court's order other than allowing the defendants to disregard the applicable rule.

As plainly demonstrated in the plaintiff's opposition to summary judgment, waiver of the rule results in fundamental unfairness. The court, over plaintiff's objections, limited the scope of the plaintiff's discovery pending resolution of the qualified immunity defense. That defense, contrary to the plain provision of the local rules, was not raised until the last day allowed in the scheduling order for dispositive motions, and after discovery had closed.

Thus, while subjecting the plaintiff to limited discovery, the court allowed the defendants to disregard the rule. Compounding the problem, as shown below, the court then granted summary judgment to the defendants, albeit erroneously, contending that the plaintiff had not made a sufficient showing of racially invidious discrimination.

The effect of the arbitrary action is so unfair as to be considered a gross violation of the plaintiff's constitutionally protected right to substantive and procedural due process. Accordingly, on this ground alone, the plaintiff is entitled to have the summary judgment order vacated and this case restored to the trial docket.

## 2.

### The Law Proscribing Racial Discrimination Is Clearly Established.

The court correctly recognized that the plaintiff's challenge of denial of tenure was made in the form of three related and alternative bases of law. Order, Docket No. 46, at 1.

The court, however, then proceeded to narrowly consider the defendants' qualified immunity under the 42 U.S.C. § 1981 claim, not only failing to accord plaintiff the benefit of the reasonable inferences from the facts presented, but wholly ignoring the plaintiff's summary judgment evidence and factual argument.

The scope of the qualified immunity defense is set forth in *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)(citations omitted).

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

More recently, the Supreme Court has interpreted the "clearly established" requirement as the law, as interpreted in decisional authority, giving "fair warning" that a particular course of conduct is not permitted. *U.S. v. Lanier*, 520 U.S. 259, 270 (1997).

In the proper context, the court's holding that the plaintiff's citation of the Supreme Court's decision in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) is not material to the issue of qualified immunity in this case is clear prejudicial error. There, as shown in plaintiff's memorandum opposing summary judgment, the Supreme Court held actionable under § 1981 an Arab Muslim's claim of racial discrimination in the denial of tenure, precisely the issue of law presented in this case.

To the extent that the court relied on *Bazán v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) for the proposition that to overcome the qualified immunity defense a plaintiff must establish as a matter of law that clearly established law was violated, the court misinterpreted the holding in that case. In fact, the case clearly holds that whether the evidence could support that a particular conduct occurred is not material to the qualified immunity defense. Id. at 490-91.

The error is particularly egregious when the qualified immunity defense is raised to a claim of racial discrimination. Surely the court cannot be of the opinion that the law barring racial discrimination is not clearly established. See, for example, *Gutierrez v. Municipal Court of Southeast Judicial Dist., Los Angeles County*, 838 F.2d 1031, 1050-51 (9th Cir. 1988), *vacated on mootness grounds*, 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989), quoting *Flores v. Pierce*, 617 F.2d 1386, 1391-92 (9th Cir.), cert. denied, 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980)("No official can ... impose discriminatory burdens on a person or group by reason of a racial or ethnic animus against them. The constitutional right to be free from such invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it.")

The factual bases for the claim of invidious racial discrimination were set forth in the plaintiff's memorandum opposing the motion for summary judgment at 18-20, demonstrating, as stated at p. 20, that the plaintiff established that he is a member of a protected racial minority, readily identifiable as such, and that each of the named defendants participated in denying him promotion and tenure by applying criteria different from that applied to other faculty.

There was no basis for qualified immunity from the racial discrimination claim, and there was ample evidence on which the jury can find that each defendant is liable for such discrimination.

### 3.

### Dismissal of the First Amendment Claim Was Plain Error.

Although the court states that in accordance with Rule 56 practice, the court views facts in the light most favorable to the plaintiff and draws all reasonable inferences in the plaintiff's favor, the court appears to do the opposite.

The First Amendment claim is not based solely on one e-mail, but on a continuing dispute over the proper accounting and application of federal funding which led to the withdrawal of funding for a major and important research project.

The court mistakenly characterizes the plaintiff's e-mail as dealing with a lament of a decrease in his funding and effect on his personnel decisions. The mention of the decrease in plaintiff's funding actually is made in an e-mail from a researcher at Texas A&M University, Dr. Marvin L. Adams. See Exh. J to Def.'s Mot. for S.J. The plaintiff's e-mail squarely placed the blame for problems on the Amarillo National Resource Center for Plutonium, and the e-mail was mailed to the main officials of the Center. Id. The court chooses to ignore the immediate response

from Dr. Adams: "Sending a copy to the ANRCP powers was a bold move! I'm glad you did it, and I hope you don't get in 'trouble' for it." See Pl. Opp. to Mot. S.J. at 13 and Exh. 3 to the submission. Dr. Adams, and another researcher at Texas A&M, Dr. Paul Nelson, followed with a letter, Id., Exh. 1, with which plaintiff was closely identified, stating the position that funds should be directly managed by the researchers who obtained the funding, instead of being channeled through the ANRCP. The Center rejected the stipulation and canceled funding to Drs. Adams and Nelson, Id., Exh. 3, while at the same time beginning a series of adverse actions against the plaintiff. See Pl. Opp. to Mot. S.J. at 13 ff. Again, the court not only does not credit plaintiff with the evidence presented, but does exactly the opposite, suggesting there was no adverse action until years later. Order, Docket No. 46, at 6 fn.1. In fact, there is no indication in the court's order that any of the plaintiff's evidence was considered at all.

Plaintiff demonstrated ample evidence to raise material issues of fact on the motivation of the defendants with respect to the First Amendment claim, Pl. Opp. to Mot. S.J. at 13-18.

The court asks whether plaintiff's speech was made in furtherance of a personal employer-employee dispute, and answers with a resounding "no." Order, Docket No. 46, at 7. Plaintiff agrees, and it is for that reason, among others, that plaintiff's First Amendment claim is viable, and its dismissal prejudicial and reversible error. See the case on which the court relies, *Kennedy v. Tangipahoa Parish Library Bd. Of Control*, 224 F.3d 359, 372 (5th Cir. 2000)("[T]he content of the speech may relate to the public concern if it does not involve solely personal matters.") The controversy involved not only Dr. Abdurrahman, the plaintiff, but also at least the two Texas A&M researchers, Drs. Adams and Nelson. The public has every reason to be interested in and concerned about a public institution's efforts to take researchers' grant funds and place them under the

centralized control of an institution or individual, as indeed the governmental funding sources also have a substantial interest.

4.

### The Court's Dismissal of the Title VI Claim Is Erroneous.

The court correctly notes that a claim under Title VI can be based on an individual's being retaliated against for raising complaints of violations of that civil rights statute, citing *Lowrey v. Texas A.&M. University System*, 117 F.3d 242, 248 (5th Cir. 1997). *Lowrey* dealt with misallocation of resources between male and female athletes, in violation of Title IX of the Education Amendments. The court states that Dr. Abdurrahman did not present any evidence supporting this claim. Again, one might question whether the court read the plaintiff's memorandum, demonstrating misallocation of resources to Arab students being supervised by Dr. Abdurrahman, Pl. Opp. to Mot. for S.J. at 20-22.

### Summary and Conclusion

That the court might not have been inclined to read plaintiff's memorandum, and consider plaintiff's evidence, after plodding through the massive motion and reply of the defendants is quite understandable.

If the court will consider the references to the plaintiff's evidence, as identified in this motion, the court must conclude that granting summary judgment was error and must be vacated. To the extent that the court might weigh the sufficiency of the evidence, the court must also consider its order barring discovery, and the effect of the untimely presentation of the defendants' qualified immunity defense.

A prompt scheduling of trial of this case respectfully also is requested.

Respectfully submitted,

David T. López
Attorney-in-Charge for Plaintiff
State Bar of Texas No. 12563000
3900 Montrose Boulevard
Houston, TX 77006-4959
Telephone: 713.523.3900
Telecopier: 713.523.3908
E-mail: dtlopez@lopezlawfirm.com

OF COUNSEL:

DAVID T. LOPEZ & ASSOC.

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing submission was served on this 18th day of February, 2002, on the attorney-in-charge for the respondent party by placing it in the United States Mail, postage prepaid, addressed to the last known address as follows:

Linda A. Halpern, Esq.
Assistant Attorney General
General Litigation Division
Office of the Texas Attorney General
P. O. Box 12548
Austin, TX 78711-2548

David T. López